(889 P.2d 808)

No. 71,493

E & M READY-MIX & PRE-CAST, INC., *Plaintiff/Appellee*, v. JOHN
SANDERS and PERRY SANDERS PLUMBING & HEATING, INC.,
*Defendants*, and MIDWEST TITAN, INC., *Garnishee/Appellant*.

—

Opinion filed February 10, 1995.

*G. Steven Ruprecht* and *Karen J. Halbrook*, of Husch & Eppenberger, of
Kansas City, Missouri, for appellant.

*W. Ann Hansbrough* and *Craig T. Kenworthy*, of Swanson, Midgley, Gang-
were, Kitchin & McLarney LLC, of Overland Park, for appellee.

Before GERNON, P.J., LEWIS, J., and JOHN W. WHITE, District
Judge, assigned.

WHITE, J.: Midwest Titan, Inc., (Midwest) the garnishee, appeals from a judgment entered in favor of the plaintiff, E & M Ready-Mix & Pre-Cast, Inc., (E & M). Midwest, a general contractor, was served with a garnishment order in which E & M claimed funds were owed by Midwest to John Sanders and Perry Sanders Plumbing & Heating, Inc., (Sanders). E & M held a judgment against Sanders in a separate and unrelated matter. Midwest, in its answer to E & M's garnishment order, denied any liability to Sanders. The trial court awarded E & M a judgment against Midwest for the amount of E & M's judgment against Sanders. We reverse the trial court's decision.

Midwest was general contractor for the construction of a middle school in Emporia, Kansas. In June of 1992, Midwest entered into a subcontract with Sanders to perform mechanical work on the project. Pursuant to the subcontract, Sanders provided surety bonds issued by the Great American Insurance Company (Great American), guaranteeing the performance of the work and payment of all bills incurred by Sanders.

The subcontract provided that Sanders would be paid $484,175 for the mechanical work. Later, change orders increased the amount by $8,576. Midwest was to pay Sanders monthly progress payments based on the percentage of the total work completed and the cost of materials and equipment delivered, less a 10% "retainage." Sanders was required to pay for materials, equipment, and labor. Upon default by Sanders, Midwest was entitled to pay any amounts owed by Sanders to its creditors or employees and deduct the cost from any amounts to be paid to Sanders. Upon persistent or repeated default by Sanders, Midwest was entitled to terminate the subcontract agreement and complete the work. If the unpaid balance of the subcontract price exceeded the expense of finishing the work, the excess would be paid to Sanders, but, if the expense exceeded the subcontract price, Sanders would pay Midwest the difference.

By April 29, 1993, Sanders was having difficulty meeting its obligations on the contract. The sum of $314,617 had been paid on the subcontract, and outstanding obligations to Sanders' cred-

itors totalled $57,141, leaving a balance of $119,993 on the contract price. Midwest advised Great American's agent of these figures on April 29 and warned that "Sanders continues to expend significant amounts of labor which may exceed the remaining Contract Balance." Midwest requested and received consent from Great American to pay Sanders' payroll.

Sanders owed over $50,000 in back taxes, interest, and penalties. On June 3, 1993, the Internal Revenue Service issued a notice of levy to Midwest, attaching receivables due or to become due to Sanders under the contract. On June 7, Midwest advised Great American's agent that there was a greater likelihood of a shortfall on the project. The agent consented that Midwest should continue paying Sanders' payroll.

By June 23, 1993, Midwest had paid $395,930 to or on behalf of Sanders. Sanders' outstanding obligations incurred through June 4 totalled $126,947. The total of these amounts, $522,877, exceeded the subcontract price by $30,126. On June 28, in a letter drafted by Midwest's counsel, Sanders declared itself in default. Sanders requested that Great American perform its obligations under its bonds. On the same day, Great American consented that Midwest should continue paying Sanders' payroll, suppliers, and taxes from the subcontract funds. Afterward, Great American continued to consent to Midwest's payment of Sanders' payroll. As of August 30, 1993, Great American had not agreed to reimburse Midwest for payments made to Sanders' creditors.

On March 23, 1993, E & M obtained a $7,362.24 judgment against Sanders on an unrelated matter in Missouri. The Missouri judgment was filed in Johnson County on June 4, 1993. On June 17, 1993, E & M filed a request for garnishment of wages owed to Sanders by Midwest. Midwest was served with the wage garnishment order and responded with a letter stating that it owed no wages to Sanders because Sanders was not an employee of Midwest. The letter also informed E & M that Sanders "does have subcontract agreements with Midwest Titan, Inc. at this time," but that "[t]here are no amounts that are currently due and owing to Perry Sanders Plumbing & Heating, Inc." After service of the garnishment order, Midwest paid some $16,000 of

subcontract funds directly to Sanders. E & M did not file a reply to Midwest's response to the wage garnishment order.

On August 10, 1993, E & M filed a request for garnishment of money or property other than wages due and owing to Sanders by Midwest. Midwest was served with the order of garnishment on August 13 and filed its answer on September 3, again stating that it did not hold any money due and owing to Sanders. Between August 13 and September 3, Midwest paid out on Sanders' behalf approximately $8,000 of the remaining subcontract funds.

In its reply, E & M alleged that Midwest's answer failed to disclose that it had been making payments directly to Sanders' employees and suppliers and that Midwest held funds to be paid to Sanders.

On the day of the trial, Great American moved to intervene in the proceeding. Great American alleged that after Sanders' default on the subcontract with Midwest, Great American commenced performing under its bond. Great American alleged that it was entitled to the remaining subcontract funds held by Midwest.

At trial, E & M and Midwest agreed that an evidentiary hearing was unnecessary and stipulated to the facts set out in the court file, contract documents, and correspondence. E & M argued that it was entitled to judgment because Midwest's answers to the garnishment orders were false in that they failed to disclose the existence of Great American's claim to the contract funds. Midwest argued that it held no money due and owing to Sanders because Sanders was in default and Great American was entitled to the remaining subcontract funds.

The trial court entered judgment in favor of E & M for $7,362.24 based on a finding that Midwest's answer to the second garnishment order was inaccurate because it did not disclose the existence of Great American's claim to the subcontract funds.

Midwest contends that the trial court erred in entering judgment against it for filing an insufficient answer to the second garnishment order. The trial court found, in part, that Midwest conceded that if its answers were inaccurate, judgment should be entered against it. We do not construe counsel's statements at

trial as making that concession. Midwest's counsel argued that Midwest owed Sanders no money because Sanders had defaulted and the surety was entitled to any remaining contract funds. What counsel conceded was that if the court found Sanders was not in default, Midwest held funds due and owing to Sanders and Midwest "probably answered the garnishment wrong." Counsel merely conceded that if Midwest lost on the merits, judgment should be entered against it.

The trial court relied on *Railway Co. v. Bowman*, 95 Kan. 5, 147 Pac. 813 (1915), and *Lumber Co. v. Bank*, 63 Kan. 768, 66 Pac. 1024 (1901).

In *Lumber Co. v. Bank*, the garnishee answered by simply denying all liability and did not disclose that it held the money sought for the benefit of a third-party claimant. The third party intervened, claiming the money. The court reversed a judgment in favor of the garnishee, stating:

"It is the duty of one summoned in garnishment, holding property in the name of the defendant debtor, but having notice of the claim of a third party to the same, to disclose, by its answer, the name and post-office address of such claimant, the fact that such claim is made, and the nature of such claim so far as known to the garnishee, in order that such claimant may be interpleaded and the garnishee be relieved from liability by delivery of the property to the officers of the court, as provided by statute." 63 Kan. 768, Syl. ¶ 1.

The court held in *Lumber Co. v. Bank* that a garnishee who failed to disclose a third party's claim in its answer could not escape liability to the plaintiff based on the third party's claim, if revealed at trial that it was liable to the defendant. 63 Kan. at 771-72. The court followed *Lumber Co. v. Bank* in *Railway Co. v. Bowman*, stating that "good faith toward the court and neutrality between the litigants required [the garnishee] to set forth specifically his relation to the money in his hands." 95 Kan. at 7. See *Harwi v. Klippert*, 67 Kan. 743, 74 Pac. 254 (1903).

In both cases, the court relied on the statutes then governing garnishment. Those statutes provided two ways to answer a garnishment order. They provided that "if the truth warrant," the garnishee could file an affidavit of nonliability, simply stating that the garnishee owed nothing and had no property belonging to

the defendant or in which the defendant had an interest. G.S. 1901, § 4638; G.S. 1915, § 7125. A garnishee who did not file an affidavit of nonliability was required to file a more detailed affidavit. The statutes provided that the garnishee could disclose the names and residences of any other persons claiming the money or property and the nature of their claims. The garnishee was required to disclose the amount of indebtedness to the defendant and all the facts and circumstances necessary to a complete understanding of the indebtedness. In addition, the statutes provided that a garnishee who was in doubt respecting liability could set forth the relevant facts and circumstances and submit the question to the court. G.S. 1901, § 4639; G.S. 1915, § 7126.

The garnishment statutes are considerably different now. K.S.A. 1993 Supp. 60-718(a) includes a form for answering orders of garnishment of money or property other than wages. An answer is deemed sufficient if it is "substantially" in the statutory form and contains "not less than that prescribed" in the form. Subsection (b) contains parallel provisions for answering orders for garnishment of wages.

The form for an answer to an order of garnishment of money or property other than wages requires a sworn statement from the garnishee that:

"(1) (Money or indebtedness due) I hold money or am indebted to the defendant, other than for earnings due and owing defendant, as of the date of this answer, in the following manner and amounts: _____.

"(2) (Personal property in possession) I have possession of personal property, goods, chattels, stocks, rights, credits, or effects of the defendant, as of the date of this answer, described and having an estimated value as follows: _____ _____." K.S.A. 1993 Supp. 60-718(a).

There is no longer an express provision requiring a more detailed affidavit or answer when liability is doubtful or disputed. See *Washburn v. Andrew*, 209 Kan. 436, 439, 496 P.2d 1367 (1972). There is also no requirement for disclosing the claims of third parties to the money or property sought. The form does require a sworn statement that the garnishee has not delivered any money or property other than earnings to the defendant since receiving the order and will hold the money or property pending further order of the court.

K.S.A. 1993 Supp. 60-718(c) provides that if a garnishee fails to answer an order of garnishment "within the time and manner herein specified," the court may grant judgment against the garnishee. However, 60-718 has been interpreted liberally. In *McCreery v. McCreery*, 210 Kan. 99, 100, 499 P.2d 1118 (1972), the garnishee answered by crossing out the form language stating that the garnishee has delivered no money or property to the defendants since receiving the order and stating that the amount it owed was "None." The answer was verified as required by the statute. In reversing a default judgment entered against the garnishee for failure to answer, the court stated:

"We can see justification for a judgment in favor of the plaintiff when the garnishee completely ignores the garnishment order . . . . We can see no justification for employing the harsh results of substituting one debtor for another after a garnishee has submitted himself to the jurisdiction of the court. In this situation, even though a garnishee fails to supply information of a material nature to the interests of the plaintiff, the plaintiff has remedies and the court has jurisdiction to enforce those remedies." 210 Kan. at 102-03.

In addition, the court stated:

"[A]s long as a garnishee submits himself to the jurisdiction of the court the discovery provisions of the code give ample tools to the plaintiff to protect and enforce all rights intended to be provided to support his interests. Whenever a garnishee makes an appearance in an action no judgment should be entered against him without providing an opportunity to fully answer and present his defenses." 210 Kan. at 104.

See *Jones v. Main*, 196 Kan. 91, 410 P.2d 303 (1966); *Schwerdt v. Speedway Festivals, Inc.*, 7 Kan. App. 2d 40, 637 P.2d 477 (1981).

Under *Lumber Co. v. Bank* and *Railway Co. v. Bowman*, an insufficient answer of a garnishee did not entitle the plaintiff to judgment. In both cases, there was a trial on the merits. In *Lumber Co. v. Bank*, the court held that the garnishee could not raise a third party's claim that was not disclosed by the answer but would be liable to the plaintiff "in the event the trial upon the issue joined should disclose any liability to defendant." 63 Kan. at 771-72.

The trial court erred in entering judgment against Midwest based on the sufficiency of its answer. In denying that it owed

any money to Sanders, Midwest disclosed all that the statutory form required. There is no requirement that the answer to a garnishment order disclose the existence of a third party's claim or other basis for the denial of liability. The availability of discovery is sufficient to enable plaintiffs to learn the basis of a garnishee's denial.

Midwest next contends that it was entitled to judgment on the merits because Sanders was in default on its contract with Midwest. E & M argues that the trial court ruled on the merits by making an implied finding that Midwest failed to sustain its burden of proof. E & M's argument is not supported by the record. The trial court did not rule on the merits but expressly based its ruling on the insufficiency of Midwest's answer.

The decision of the trial court is reversed, and the case is remanded for trial on the merits.